UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL ROOSEVELT JONES,

    Plaintiff,

v.

MALAIKA G. TUCKER, *et al.*,

    Defendants.

                                    /

Case No. 1:22-cv-159

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Samuel Roosevelt Jones ("Jones"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). The alleged incidents occurred at the Ionia Correctional Facility (ICF). *See* Compl. (ECF No. 1). Jones filed this lawsuit against the following defendants: Corrections Officer (CO) Malaika G. Tucker; Deputy Warden Steven Barber; Prison Counselor (PC) Patrick L. Sanborn; Sgt. J. Jaramillo; CO Beehler; and Assistant Deputy Warden (ADW) Bonn. *Id*. at PageID.2. This matter is now before the Court on defendants Patrick Sanborn[1], John Jaramillo, Steven Barber, and Dale Bonn's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 23). Two defendants, Malaika G. Turner and Beehler, do not contest exhaustion.

**I.    Jones' allegations**

Defendants have fairly summarized Jones' complaint as follows:

> Jones alleges that on July 19, 2021, ICF Corrections Officer (CO) Malaika Tucker threatened to put a hit on him. (ECF No. 1 ¶¶ 1-2, PageID.3.) On August 1, 2021, Jones received a threatening behavior misconduct ticket arising out of an altercation with prisoners Williams and Beeks, two "Four Corner Hustla" gang-member[s],

---

[1] Jones sometimes refers to defendant "Sanborn" as "Sandborn".

1

and was placed in segregation; while in segregation, Beeks (who also received a ticket) threatened that his gang would stab Jones if he did not claim "horseplay" to beat the tickets; Jones and Beeks were both found not guilty on their tickets. (*Id*. ¶ 3, PageID.3-4.) On August 10, 2021, Jones met with the Security Classification Committee (SCC) [FN1], presented a confidential informant statement against the "Four Corner Hustla" gang, and requested protective custody, but the SCC denied his request; Jones refused to return to general population, and Sanborn issued him three misconduct tickets (one each day, for three days) for his refusal. (*Id*. ¶¶ 4-8, PageID.4-5.) The SCC then allegedly falsified documents to deny Jones protection. (*Id*. ¶ 9, PageID.5.) Jones also alleges that on September 1 and 17, and October 17, 2021, CO Nathan Beehler called him a rat on the intercom and exposed information he disclosed in his confidential informant statement; and that prisoners with gang affiliations were assigned cells next to his in October and November 2021. (*Id*. ¶¶ 10-14, PageID.5-6.) Last, Jones alleges that on December 23, 2021, Sgt. John Jaramillo assembled an Emergency Response Team that removed him from his cell, placed him in the shower, strip searched him, and sprayed him with a chemical agent, whereupon he suffered an asthma attack. (*Id*. ¶ 16, PageID.6-7.) Jones filed this lawsuit on February 2, 2022 (*id*.) and supplemented it on April 4, 2022 (ECF No. 10); in the Supplement, Jones complained that he was placed in a cell without a sprinkler between March 9 and 29, 2022 (*id*.).

[FN 1 – The SCC included Assistant Deputy Warden (ADW) Steven Barber, Prison Counselor (PC) Patrick Sanborn, and other individuals.]

Defendants' Brief (ECF No. 24, PageID.133).[2]

Based on these allegations, Jones alleged that defendants violated his Eighth Amendment rights when they placed him in imminent danger, *i.e.*, "when Malaika G. Tucker and Officer Beehler used gang members to target Mr. Jones for filing complaints." Compl. at PageID.10. In addition, Deputy Warden Barber, PC Sanborn, and ADW Bonn failed to protect Jones after he appeared before the SCC. Finally, Jones alleged that CO Jaramillo "acted with reckless indifference" to his constitutional rights "after RN Moody explained to J. Jaramillo that plaintiff is a [sic] high risk to chemical agents." *Id*. at PageID.10. Jones seeks relief including compensatory and punitive damages. *Id*. at PageID.11.

---

[2] The Court previously struck Jones' supplemental complaint or "supplement" (ECF No. 10) which he improperly filed in violation of a court ordered stay of proceedings.

## II. Legal standard

### A. Summary judgment

Four defendants, PC Sanborn, CO Jaramillo, Deputy Warden Barber and ADW Bonn, have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

4

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III.    Discussion

In addressing plaintiff's grievances, the Court is aware that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued" and that "the grievance is not a summons and complaint that initiates adversarial litigation". *Jones*, 549 U.S. at 219, quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). For purposes of exhaustion, a prison official is not "alerted" to the "problem" being grieved unless the prisoner complies with the requirements of PD 03.02.130, which requires the prisoner to list the "[d]ates, times, places and names of all those involved in the issue being grieved."

Defendants point out that Jones' MDOC Prisoner Step III Grievance Report shows that he pursued 12 grievances through Step III arising out incidents at ICF from July 19, 2021 (the date of the first alleged incident) through March 16, 2022 (a few weeks after Jones filed the complaint). Defendants' Brief at PageID.134-135; MDOC Step III Prisoner Grievance Report (ECF No. 24-3, PageID.159-162). Of these, defendants identified two grievances filed against CO Beehler and one grievance filed against CO Tucker which were relevant to the claims at issue in

5

this lawsuit. *Id*. As discussed, neither CO Beehler nor CO Tucker seek summary judgment for lack of exhaustion. While Jones filed a grievance against PC Sanborn, ICF-21-10-1436-15f ("1436"), that grievance did not address any of the claims in this lawsuit. *See* Grievance 1436 (ECF No. 24-3, PageID.202) (PC Sanborn and mailroom staff mishandled his legal mail on or about September 13, 2021). In summary, defendants have demonstrated that Jones did not properly exhaust a grievance against PC Sanborn, CO Jaramillo, Deputy Warden Barber or ADW Bonn with respect to the constitutional violations alleged in the complaint or supplement.

In his response, Jones stated that "[a]round Oct 2021, Mr. Jones mailed MDOC Internal Affairs a copy of this case #1:22-cv-1159 [sic]" and that Internal Affairs responded. Jones' Response (ECF No. 27, PageID.261). Jones could not have mailed the MDOC a "copy" of this case in October 2021 when he did not file the case until 2022. Jones does not provide a copy what he sent to Internal Affairs, which apparently included some claims against non-party Floyd. Internal Affairs which responded on June 14, 2022, stating, "Your complaint from Oct/2021 regarding employees FLOYD, SANBORN, and TUCKER has been investigated and found to lack sufficient information, or evidence, to support your allegation(s)." Internal Investigation Letter (ECF No. 27-1, PageID.266). Even if Jones' letter to the authorities referenced incidents alleged in this case, sending a letter to Internal Affairs does not exhaust a grievance under MDOC Policy.

Next, Jones contends that he was on modified access on January 20, 2022, and was denied a request for a grievance form against PC Sanborn, Deputy Warden Barber, and ADW Bonn. Jones' Response at PageID.262. He also refers to a protection request and Grievance ICF-2022-0143-22A ("143"). *Id*. Jones submitted a kite requesting a grievance form on February 3, 2022. Grievance Request (ECF No. 27-1, PageID.268). This request was granted and he was allowed to file Grievance 143 regarding members of the ICF Security Classification Committee,

6

including defendants Deputy Warden Barber, PC Sanborn, and ADW Bonn. *Id*. However, there is no evidence that Grievance 143 involved the claims in this lawsuit or that Jones properly exhausted that grievance prior to filing this lawsuit. In this regard, Jones requested the Step I grievance form only 10 days before he signed the complaint (February 13, 2022) and presented no evidence that he exhausted the grievance through Step III during that short time period. *See* Compl. at PageID.11.

Finally with respect to CO Jaramillo, Jones contends that he exhausted his constitutional claim in Grievance ICF-22-02-0118-26A ("118"). Jones' Response at PageID.262. While Jones exhausted this claim in Grievance 118, he did not exhaust the claim before filing the complaint on February 22, 2022 (ECF No. 1). The incident with Jaramillo occurred on January 23, 2022. *See* Grievance 118 (ECF No. 1-1, PageID.44). Jones claimed that Jaramillo used excessive force by spraying him with a chemical agent. Grievance 118 at PageID.44. The MDOC denied the grievance February 7, 2022. *Id*. at PageID.45. Jones filed a Step II appeal on February 14, 2022, which was denied on or about February 16, 2022. *Id*. at PageID.46, 270.[3] Jones filed the Step III Appeal on or about March 14, 2022, and the MDOC denied it on April 13, 2022, about seven weeks after Jones filed his complaint in this Court. *Id*. at PageID.269-270. It is well established that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Accordingly, Jones has failed to properly exhaust his claim against CO Jaramillo.

Based on this record, Jones did not properly exhaust any grievances to support his claims against PC Sanborn, CO Jaramillo, Deputy Warden Barber, and ADW Bonn. *Jones*, 549

---

[3] The Court notes that portions of Grievance 118 appear in ECF Nos. 1-1 (PageID.44-46) and 27-1 (PageID.269-270).

U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, defendants' motion for summary judgment should be granted.

### IV.    Recommendation

For these reasons, I respectfully recommend that defendants' PC Sanborn, CO Jaramillo, Deputy Warden Barber, and ADW Bonn's motion for summary judgment on the basis of exhaustion (ECF No. 23) be **GRANTED**, and that these four defendants be dismissed from this action.

I further recommend that this case proceed against defendants CO Tucker and CO Beehler.


Dated:  January 27, 2023                                          /s/ Ray Kent
                                                                                       RAY KENT
                                                                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).