UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL ROOSEVELT JONES,

    Plaintiff,

v.

MALAIKA G. TUCKER, *et al.*,

    Defendants.

Case No. 1:22-cv-159

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Samuel Roosevelt Jones ("Jones"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). The alleged incidents occurred at the Ionia Correctional Facility (ICF). *See* Compl. (ECF No. 1). Two defendants remain, Corrections Officer (CO) Malaika G. Tucker and CO Nathan Beehler. This matter is now before the Court on defendants' motion for summary judgment (ECF No. 57).

    **I.**    **Jones' allegations**

Jones alleged that defendants violated his Eighth Amendment rights when they placed him in imminent danger, *i.e.*, "when Malaika G. Tucker and Officer Beehler used gang members to target Mr. Jones for filing complaints." Compl. (ECF No. 1, PageID.10).

    **A.**    **CO Tucker**

Jones claims that CO Tucker made threatening prison-slang comments toward him and then about two weeks later used sign language to direct other prisoners to assault him.

1

On July 19, 2021, CO Tucker talked with prisoner Brooks asking why Jones was still "running his mouth" and "on the yard." Compl. at PageID.3. At his deposition, Jones testified that "on the yard" was a threat,"[t]hat's legal for, why is still out here?" Jones Dep. (ECF No. 58-2, PageID.412). Jones defined the term "is he still on the yard" to mean that "[s]ome other prisoners should have rung up Jones [sic], struck him in the face or stabbed him, and potentially Jones will fight back then the two of them will go to segregation." *Id*. at PageID.412-413. Jones also testified that "[t]he term taken off on is lingo for someone attacking Jones." *Id*. at PageID.413.

In addressing his claim against CO Tucker, Jones stated that there was a target on his back because he wrote grievances against prison staff. *Id*. at PageID.412.

> [S]taff didn't want me in the unit, but the only way to get rid of me is by soliciting prisoners because I -- anything that they did to me, I used it against them as retaliation because of those other cases I got to establish this was -- they wasn't in the position to write me a misconduct or put me in the hole because I would used it against them. So their only alternative was to go use -- to solicit prisoners.

*Id*. After Tucker spoke to Brooks, Jones told Brooks "you supposed to be my man. Why you entertaining that? You supposed to dismiss her." *Id*. They got into an argument and Brooks told Jones "he was going to knock me out and stick his dick in my face." *Id*. Jones "wrote a PREA [Prison Rape Elimination Act complaint]" on Brooks. *Id*.; *see* Compl. at PageID.3.

About two weeks later, on August 1, 2021, Jones alleged that CO Tucker came out to the yard and harassed him, telling Jones "your [sic] gone today." Compl. at PageID.3. Jones "made a formal complaint" to non-parties Sgt. Bledsoe and Officer T. Floyd, who told him that Tucker was just doing her job. *Id*. Jones continued:

> Afterwards a known Four Corner Hustla - prisoner Williams [ ] then approached plaintiff while he was on the ground using the AB-ROLLER [ ] and started to make threats and became loud with plaintiff. Williams then stated: Who the fuck you looking at? I know you not looking at me while you talking shit to them (refering [sic] to the officers). Williams [ ] went further in threatening Mr. Jones and stated to Jones: I'll beat your ass! Plaintiff responded no you won't while standing up

>   because Williams was now standing over Jones when another prison member Four Corner Hustla [prisoner Beeks] came and seperated [sic] Williams from Jones. Staff then called yard in to lock down when prisoner Beeks [ ] ran toward Mr. Jones with closed fists.  Plaintiff then ran in the opposite direction [ ] because he was 11 months misconduct free and was scheduled to see the parole board for his earliest release . . .

*Id*. at PageID.3-4.

During Jones' deposition, defendants' counsel asked him, "What facts can you point to show that your safety was put at risk by CO Tucker?"  Jones Dep. (ECF No. 58-2, PageID.414).  Jones responded:

>   CO Tucker came out on the yard two weeks later after I wrote the grievance, after the sergeant assured me that it wasn't going to happen.  And I told the sergeant in the grievance interview, I said, I wrote a PREA on Brooks.  I'm not in fear of my life at the time, but if this continues, I'm going to seek a resolution and investigation in a higher court.
>
>   So two weeks later she [CO Tucker] came on the unit. She doing sign language with a prisoner by the -- by the -- prisoner by the name of Williams, a/k/a Big Mama, gang member. . . .

*Id*.

Jones then went into a discussion about his confrontation with prisoners Williams and Beeks, making a vague reference to CO Tucker signaling other prisoners:

>   Q    . . . Okay.  So you said you're on yard and you say that CO Tucker used gang signs or hand signals to Prisoner Williams; is that correct?
>
>   A    That was -- that was after the fact. When CO Tucker came to the yard, she was harassing me.  She's like, you're gone today.  You're gone today.  So I went up to Sergeant Bledsoe and Officer Foley [sic] and I said, look, I filed a grievance on her for threatening to put a hit on me. Now, she's out in the yard harassing me.  I said, man, what up with – what's going on?
>
>   Both the officers responded, she's just doing her job. It's part of her being. So I was upset about it. This is her job. I walked away, and I'm – I'm like, you know, this shit ain't right and I walked away. So the time -- the whole time that I'm still talking to both officers while walking away, Prisoner Williams, he says, who the fuck you looking at?  I said, I'm not looking at you. He says, I know you ain't looking at me? Why you talking to shit to him?

3

> So at the time, I'm like, all right. I'm not looking at you. In my mind, I gotta roll up and go home. I'm not looking at you. I'm only going for a walk on the grounds. That led into a verbal argument, and it led to another prisoner by the name of Prisoner Beeks who came and separated me and Prisoner Williams. I mean, me -- yeah, me and Prisoner Williams. After that, Prisoner Williams and Beeks went their separate way, and I went my separate way.
>
> Officer T. Floyd was in the yard, yard was over, and then Prisoner Beeks ran up on me. He ran up on me, and he tried to strike me, and, you know, I just ran around in circles. I wasn't about to let him – I wasn't about to engage in a fight.
>
> Q    What does this have to do with Corrections Officer Tucker? How does -- how does this incident on the yard where Prisoner Beeks and Prisoner Williams had an argument with you, what does this have to do with CO Tucker?
>
> A    CO Tucker was doing sign language -- I mean, Prisoner Williams at dead bar. CO Tucker was standing at the back door of Unit 4, and Prisoner Williams was sitting at the dead bar. Now, Prisoner Williams engaged in an argument with me because I was having a word with Tucker. One -- one thing about prisoners in prison, they have a close relationships with certain female officers. I don't -- I don't have proof that he had a close relationship with CO Tucker, but she told me I was gone that day -- I was gone that day, and she led me on that I was -- I was getting off the yard that day.

*Id*. at PageID.414-415.

### B.    CO Beehler

Jones makes four claims against CO Beehler for advertising the contents of a statement Jones wrote against "The Four Corner Hustlas" ("4 Corner Hustlers"). Compl. (ECF No. 1, PageID.5). First, on September 1, 2021, Beehler called Jones a "rat" while passing out food in his cell. *Id*. Second, on September 27, 2021, Beehler made an announcement on the unit intercom, calling Jones a rat who snitched on The Four Corner Hustlas. *Id*. Third, on October 17, 2021, Beehler further put Jones in imminent danger by disclosing information to prisoners that Jones snitched on The Four Corner Hustlas. *Id*. Fourth, on December 24, 2021, Beehler exposed Jones' personal information to prisoner Brooks, which put Jones at risk:

4

>On 12/24/21, Officer Beehler can be seen on housing unit camera going to B-Wing supply close to retrieve Jones [sic] criminal trial transcripts that indicate testimony against another criminal, Jones pre-sentence investigation report, his SCC Report and written statement against The Four Corner Hustlas etc. taking hits for ICF staff and gave it to prisoner Robert Brooks. . . . who then started to publicize that plaintiff is a rat and told on Brooks in a PREA Jones wrote against him, and plaintiff is a rat he snitched on the 4's (Four Corner Hustlas) for doing a hit for staff.  Brooks went on to state that all the gangs got cheese (money) on Jnes [sic] head and cant [sic] walk no GP yard.

Compl. at PageID.7.

## II. Legal standard

### A. Summary judgment

Defendants have moved for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

>The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

5

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Jones' Eighth Amendment claim

"To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). To meet the objective element, the inmate must show that the failure to protect from risk of harm is objectively sufficiently serious, *i.e.*, that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. The subjective element focuses on whether prison officials "had a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. This requires that prison officials know that inmates face a substantial risk of harm and "disregard[ ] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. However, "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (internal quotation marks omitted). In addition, "a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop*, 636 F.3d at 767.

#### 1. CO Tucker

Jones' claim against CO Tucker is confusing and conclusory. Based on the record, Jones seeks to connect a conversation between Tucker and prisoner Brooks (Jones' "man") which occurred in his unit on July 19, 2021, with an altercation which occurred on the prison yard on August 1, 2021, between Jones and two other prisoners (Williams and Beeks). Jones' rambling

6

and at times convoluted testimony does not present a coherent claim against CO Tucker, *i.e.*, Jones claims that CO Tucker gave an unidentified signal to prisoner Williams, which resulted in an altercation between Williams and Jones, which somehow resulted in prisoner Beeks charging at Jones with clenched fists. Jones' claim against CO Tucker appears to be an attempt to transform his August 1, 2021 altercation with prisoners Williams and Beeks into a § 1983 Eighth Amendment failure to protect claim against CO Tucker. At most, Jones' has established that CO Tucker was standing at the back door of Unit 4 when he had an altercation with prisoners Williams and Beeks. *See Brim v. McKee*, No. 4:04-cv-12, 2005 WL 2156051 at *3 (W.D. Mich. Sept. 6, 2005) ("Generally, an isolated or occasional attack is insufficient to state an Eighth Amendment claim. *See Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982)"). In summary, Jones has failed to establish facts to support an Eighth Amendment claim against CO Tucker. Accordingly, CO Tucker's motion for summary judgment should be granted.

### 2.     CO Beehler

Jones alleged three incidents involving CO Beehler's reference to Jones as a "rat" or a "snitch," with a related incident of disclosing Jones' personal information. In *Clark v. Adams*, No. 2:22-cv-104, 2022 WL 2301952 (W.D. Mich. June 27, 2022), this Court explained the seriousness of correctional facility staff referring to a prisoner as a "rat" or a "snitch":

> Labeling an inmate as [a rat] may constitute deliberate indifference to the inmate's safety. *See, e.g., Comstock v. McCrary*, 273 F.3d 693, 699, n.2 (6th Cir. 2001) (acknowledging that being labeled a snitch could make the inmate a target for prison attacks); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *see also Odom v. McKenzie*, No. 12-CV-79-HRW, 2012 WL 6214367, at *3 (E.D. Ky. Dec. 13, 2012) (citations omitted). "It does not matter whether the risk is caused by the actions of prison officials or may come at the hands of other inmates. If an inmate is believed to be a 'snitch' by other inmates, he or she faces a substantial risk of assault by other inmates." *Spotts v. Hock*, No. CIV. 10-353-GFVT, 2011 WL 676942, at *2-3 (E.D. Ky. Feb. 16, 2011) (internal citation omitted). However, in at least one published opinion, the Sixth Circuit has held that to state a claim for deliberate indifference under the Eighth Amendment in such

7

> a context, a plaintiff must allege, and ultimately establish, that he or she suffered physical harm as a result of being labeled a snitch. *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *Yaklich*, 148 F.3d at 600-01 (concluding that plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical injury); *White v. Trayser*, No. 10-CV-11397, 2011 U.S. Dist. LEXIS 31434, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011) (holding that plaintiff failed to state an Eighth Amendment claim where he alleged that defendant endangered his life by thanking him for information about illegal contraband in the presence of other inmates but failed to allege that he suffered any physical injury); *Catanzaro v. Mich. Dep't of Corr.*, No. 08-11173, 2009 U.S. Dist. LEXIS 108443 at *25, 2009 WL 4250027, at *12 (E.D. Mich. Nov. 19, 2009) ("[A]n Eighth Amendment deliberate indifference claim must be grounded in an actual physical injury.").
>
> That said, a prisoner ordinarily does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; instead, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety"); *see also Gresham v. Walczak*, No. 1:20-cv-310, 2020 WL 7872192, at *2 (W.D. Mich. Nov. 30, 2021) (holding that an officer's accusation that a prisoner was a snitch, coupled with a threat of physical harm from a prisoner, was sufficient to state an Eighth Amendment claim).

*Clark*, 2022 WL 2301952 at *10.

Jones contends that CO Beehler's actions put him at risk of injury. During his deposition, Jones testified that the MDOC "put me on protection" and that he wrote a statement about:

> . . . what happened where Prisoner Williams sent his 4 Corner Hustlers brother at me on yard. I indicated in that statement that he took a hit out on me.

Jones Dep. at PageID.421. Jones also testified that,

> So how Officer Beehler got this information, I don't know. But for him to advertise it was out of line. . .

*Id*. Jones also testified regarding CO Beehler's references to him being a rat or snitch.

8

On September 1, 2021, CO Beehler called him a "rat" while passing a meal tray to Jones in his cell. Jones Dep. at PageID.419. Jones stated that while he was having "a normal conversation" with the prisoner locked next door to him (Davon Reed):

> Officer Beehler was passing out meal trays. He came to my cell, he passing out meal trays. He says, I don't know why you running your mouth. You're on protection. You're a rat. You wrote a statement against the Four Corner Hustlers. I said, this just comes out of nowhere. This just comes out of nowhere. So in my mind, I'm thinking, how the hell did he know I wrote a statement?

*Id*. While Jones testified that he was in his cell with the door closed, he also testified that prisoner Reed "heard" the statement. *Id*. at PageID.419-421. When asked, "What facts can you point to to show that this statement you say CO Beehler made put your safety at risk?", Jones responded "I wrote grievances." *Id*. at PageID.420.

On September 27, 2021, CO Beehler made an announcement on the unit intercom, calling Jones a rat who was on protection. *Id*. at PageID.421. When asked how CO Beehler's statement put him at risk, Jones testified that,

> Man, he made me a target. You keep saying how and why, and I'm just saying, he advertised this one or two times, three times. He made me a target. He advertised this to the prison population and made me a target. That's how.

*Id*. at PageID.422.

On October 17, 2021, CO Beehler put Jones in imminent danger again by disclosing information over the intercom that Jones was a rat. *Id*. at PageID.422.

Finally, on December 24, 2021, CO Beehler exposed Jones' personal information to prisoner Brooks, which put Jones at risk. Jones testified that he was "looking out the small window" in his cell door and that,

> I can't see the supply closet from my cell. But I seen Officer Beehler give Prisoner Brooks all my information. It was a goldenrod copy, which was my security classification sheet.

9

*Id*. at PageID.423.  Jones continued:

> Prisoner Brooks advertised what I was in the hole for.  He read word for word my security classification sheet, what I was in the hole for, and I refused to be returned to general population.  He had no reason to know these facts word for word verbatim.  He knew my out date.  He knew my birthday.  He knew all this stuff.  He had no reason to have this -- these facts.

*Id*.

In his affidavit, CO Beehler denied ever calling Jones "a rat or snitch, whether in person or over the unit intercom." Beehler Aff. (ECF No. 58-4, PageID.441).  Beehler also denied "exposing Plaintiff Jones' personal information to prisoner Brooks." *Id*. at PageID.442.

Based on this record, the Court concludes that genuine issues of material fact exist as to whether CO Beehler acted with deliberate indifference to Jones' personal safety by calling him a rat or a snitch, and by disclosing his related personal information to prisoner Brooks.  Viewing the evidence in the light most favorable to Jones: on September 1, 2021, prisoner Reed could hear CO Beehler referring to Jones as a rat; on September 27 and October 17, 2021, the unit could hear CO Beehler announce on the intercom that Jones was a rat; and, on December 24, 2021, CO Beehler gave prisoner Brooks access to Jones' security classification and personal information.  Jones' testimony does not establish that he suffered any injury as a result of these incidents.  However, the Court concludes that based on Jones' deposition testimony, he reasonably feared that he was a target of the "4 Corner Hustlers".  Accordingly, CO Beehler's motion for summary judgment should be denied.

### III. Qualified immunity

While defendants contend that they are entitled to qualified immunity, their claim consists of a recitation of the legal standard for qualified immunity followed by the conclusory statement that, "For the reasons stated in the arguments set forth above, Defendants Tucker and Beehler are entitled to qualified immunity because Jones cannot demonstrate that Defendants

10

violated any clearly established constitutional right." Defendants' Brief (ECF No. 58, PageID.404). Defendants' cursory argument does not develop a qualified immunity defense for their actions taken against Jones; it simply repeats defendants' claim that they did not violate Jones' constitutional rights. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, defendants' claim of qualified immunity should be denied.

### IV. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 57) be **GRANTED** as to defendant Tucker and **DENIED** as to defendant Beehler.

I further recommend that this case proceed to trial with plaintiff Jones' claims against CO Beehler.


Dated: February 1, 2024                    /s/ Ray Kent
                                           RAY KENT
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).